UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALISON GEORGE, Individually and on Behalf of Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RUSHMORE SERVICE CENTER, LLC, *et al.*<br><br>Defendants. | 18-cv-13698<br><br>OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Plaintiff Alison George's one count complaint under the Fair Debt Collection Practices Act ("FDCPA"). ECF No. 13. Now before the Court is Defendants Rushmore Service Center, LLC ("Rushmore"), Miles Beacom, Dale Dobberpuhl, and Thomas Sanford's ("Individual Defendants" and with Rushmore, "Defendants") motion to compel arbitration. ECF No. 43. For the reasons set forth below, the motion is **GRANTED**.

**I.    BACKGROUND**

The facts and procedural history of this case were set forth in the Court's February 11, 2019 Opinion, familiarity with which is assumed. ECF No. 26 ("2019 Opinion"). Pursuant to the 2019 Opinion and accompanying Order, ECF No. 27, the parties engaged in discovery on the narrow issue of whether Plaintiff's claims are covered by an arbitration clause. Now before the Court is Defendants' renewed motion to compel arbitration. ECF No. 43.

**II.    DISCUSSION**

While FRCP 56 requires the Court to view the evidence in favor of the non-moving party, here, there are no genuine issues of fact. Plaintiff, as "the party resisting arbitration[,] bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91 (2000). Plaintiff argues (a) he never agreed to arbitrate, (b) Defendants cannot enforce any arbitration agreement, and (c) her claim fails outside any agreement.

**A.    Plaintiff Assented to the Arbitration Agreement**

The parties agree South Dakota law governs this dispute. Mot. at 17; Opp. at 5. Thus, the "use of an accepted credit card . . . creates a binding contract between the card holder and the card issuer." S.D.L. § 54-11-9. When a card agreement is provided with the card, the card user is bound to those terms. *See Cayanan v. Citi Holdings, Inc.*, 928 F. Supp. 2d 1182, 1199 (S.D. Cal. 2013); *Khaliquzzaman v. Equifax Info. Servs. LLC*, 17-cv-1450, 2018 WL 3825887, at *3 (E.D.N.Y. Aug. 10, 2018).

1

With their motion, Defendants submit a declaration from Julie Gilson, an employee of Premier Bankcard, LLC, ("PBC"). Gilson Decl. ¶ 1, ECF No. 43-3. PBC is the servicing entity for First Premier Bank ("FPB"), which issued the credit card. *Id.* Ms. Gilson avers that as part of FPB's "normal course of business . . . it directed its vendor . . to mail the credit card for [Plaintiff] along with the Card Agreement containing the terms and conditions governing the Account ('Card Agreement')." *Id.* ¶ 7. Based on her review of PBC's records, "the Card Agreement was mailed to [Plaintiff] on or around February 13, 2013." *Id.* ¶ 8. Thereafter, Plaintiff used the card. *Id.* ¶ 9. Under South Dakota law, that created a binding contract governed by the terms of the arbitration agreement. *See Cayanan*, 928 F. Supp. 2d at 1199 (citing S.D.L. § 54-11-9). If New Jersey law applied instead, the result is identical. *See Saroza v. Client Servs., Inc*, 17-cv-3429, 2019 WL 5677968, at *2 (D.N.J. Aug. 22, 2019).

### B. Defendants' Can Enforce the Arbitration Agreement

Arbitration agreements, like all contracts, are enforced according to their plain terms. *See Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288–89 (3d Cir. 2017). When those terms are clear, the Court need-not proceed past the four-corners of the document. *Wimmer v. Top Gun Guide Serv., Inc.*, 421 F. Supp. 3d 849, 853-54 (D.S.D. 2019).

Plaintiff argues that because FPB issued the card, they are the only entity with an arguable right to compel arbitration. *See* Opp. 6-27. But arbitration is mandatory for claims by "you or us," which explicitly includes FPB and "the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us." Gilson Decl. Ex. B ("Card Agreement"). The parties agree PBC is FPB's affiliate. Opp. at 39 ("It was the Bank's affiliate, [PBC], who hired Rushmore as an independent contractor."). Accordingly, PBC is included of the definition of "us," i.e., those empowered to enforce the arbitration agreement. *See* Card Agreement (defining "us" to include "affiliates"). Because PBC is included in "us," its agents, assigns, and employees may also enforce the arbitration agreement. *See id.*

Given the undisputed facts, the Court finds that Rushmore is an "agent" of PBC. PBC and Rushmore entered an Agreement for Collection Services on April 7, 2011. ECF No. 43-2 at 155-158 ("Collection Agreement"). Pursuant to that agreement, Rushmore was "contractually obligated to collect delinquent credit card accounts issued by First Premier Bank." *Id.* The contract required Rushmore to "use diligence[ and employ] such lawful means, methods, and procedures as in [Rushmore's] judgment, discretion, and experience" would be effective to collect on overdue accounts. *Id.* If Rushmore believed the full amount could not be recovered, it had "authority to compromise [on] accounts . . . in an amount not less than seventy percent (70%)" the amount owed. *Id.*

The Collection Agreement—particularly the explicit authority to settle claims—makes Rushmore PBC's agent. *See Dahl v. Sittner*, 429 N.W.2d 458, 461–62 (S.D. 1988) ("An agency relationship is defined as 'the representation of one called the principal by another called the agent in dealing with third persons.'" (quoting S.D.L. § 59-1-1)).[1] As an agent of

---

[1] Given that Rushmore technically collected FPB's debts (not PBC's), FPB and Rushmore may have a direct agency relationship as well. *See* S.D.L. § 59-1-1.

2

PBC, Rushmore may enforce the arbitration agreement. *See* Card Agreement. And the Individual Defendants are unquestionably Rushmore's employees. Thus, all Defendants may enforce the arbitration clause. *See id.* (applying to, *inter alia*, FPB's affiliates, the affiliates' agents, and their agents' employees).

Plaintiff's citation to *White v. Sunoco*, 870 F.3d 257 (3d Cir. 2017), and *Orn v. Alltran*, 779 F. App'x. 996 (3d Cir. 2019), is inapposite. Unlike here, the arbitration agreements in those cases did not explicitly permit affiliates, their agents, and their agents' employees to enforce the arbitration clause. The Court's conclusion here rests on those specific terms, which are enforceable as written. *See Wimmer*, 421 F. Supp. 3d at 854; *see also Doyle v. Ad Astra Recovery Servs., Inc.*, 17-cv5233, 2018 WL 1169121, at *6 & n.7 (D.N.J. Mar. 6, 2018) (citing *In re Prudential Ins. Co.*, 133 F.3d 225, 229–30 (3d Cir. 1998) (granting non-signatory's motion to compel arbitration because provision, as written, applied to party)).

### C. The Claim Falls Within the Arbitration Agreement

Plaintiff's final argument, that her claim under the FDCPA falls outside the scope of the arbitration clause, requires little analysis. The arbitration clause explicitly applies to: (a) "any claim, dispute or controversy by either you or us, arising out of or relating in any way to this Contract, this Provision (including claims regarding the applicability, enforceability or validity of this Provision), your Credit Account, any transaction on your Credit Account and our relationship"; and (b) "claims of every kind and nature . . . regardless of legal theory and remedy sought, including, but not limited to, claims based in . . . statutory law (federal and state)." Card Agreement.

The debt collection letter underlying this case unquestionably "relates" to Defendant's credit account. *See* Card Agreement. The original debt "arises out of" Defendant's card use. *Id.* And Plaintiff's FDCPA claim is statuary, as explicitly provided for in the Card Agreement. *Id.* Thus, the arbitration clause applies to Plaintiff's claim. *See Doyle*, 2018 WL 1169121, at *6.

### III.    CONCLUSION

For the reasons set forth above, the motion, ECF No. 43, is **GRANTED**. An appropriate order follows.

Date: May 11, 2020

_____
WILLIAM J. MARTINI, U.S.D.J.

3